UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
CENTRAL DIVISION

| | |
|---|---|
| KATHYRN DRYDEN,<br><br>Plaintiff,<br><br>vs.<br><br>JOSEPH GRAVES, in his official capacity as the Secretary of the SOUTH DAKOTA DEPARTMENT OF EDUCATION,<br><br>Defendant. | 3:23-cv-03005-RAL<br><br>**AMENDED COMPLAINT**<br><br>**(JURY TRIAL DEMANDED)** |

COMES NOW Plaintiff Kathryn Dryden, and brings this action for sex discrimination, pregnancy discrimination and retaliation in employment, stating the following claims against the Defendant:

**PARTIES, JURISDICTION & VENUE**

1. Kathryn Dryden ("Dryden") is an adult resident of Hughes County, South Dakota.

2. Dr. Joseph Graves has served as the Secretary of the South Dakota Department of Education (the "DOE") since January 10, 2023. In this capacity he is responsible for the operation of the DOE, including the supervision of DOE staff.

3. At all relevant times, Plaintiff was an "employee" of the State of South Dakota within the meaning of 42 U.S.C. § 2000e(f).

4. During the times relevant to this Complaint, Plaintiff was employed in the DOE office which is located in Hughes County, South Dakota.

5. At all times relevant, the State of South Dakota DOE was "an employer" within the meaning of 42 U.S.C. § 2000e(b).

1

6. This action arises under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII") and the Pregnancy Discrimination Act of 1978 at 42 U.S.C. § 2000e(k). As such, this Court has original jurisdiction to hear this Complaint and to adjudicate the claims stated herein pursuant to 28 U.S.C. § 1331.

7. Venue is proper under 28 U.S.C. § 1391 because the events or omissions giving rise to the claims occurred within the Central Division of the District of South Dakota.

8. Following her termination on February 9, 2022, Dryden timely filed a Charge of Discrimination with the EEOC.

9. Dryden received a Right to Sue Notice from U.S. Department of Justice dated February 3, 2023.

## FACTUAL ALLEGATIONS

10. In 2014, the State of South Dakota hired Dryden in the role of a staff secretary in its Department of Education. By 2018, Dryden remained employed in the DOE in a job titled "Education Program Specialist I."

11. During her employment, Dryden performed her job duties in a manner that met her employer's expectations, and she was never disciplined or placed on a plan of improvement.

12. In 2021, Dryden timely requested a maternity leave because of the impending birth of her child.

13. A DOE supervisor initially suggested an option to Dryden that was described as a hybrid maternity leave. The proposed hybrid maternity leave plan involved a scheduled maternity leave followed by an additional twelve (12) weeks of part-time,

remote work.

11. The State's remote work policy states that remote work is approved on a case by case basis.

12. In 2020, 2021 and 2022, most State employees had either concluded remote work schedules or were continuing to work remotely because of pandemic-related health concerns.

13. Prior to Dryden's maternity leave, DOE supervisors had required DOE staff to give a 24-hour notice to request remote work.

14. Prior to Dryden's maternity leave, Dryden had been permitted to work remotely for reasons including feeling unwell after a medical procedure and to care for a sick pet. Dryden had also worked remotely exclusively and successfully between January 2021 through March 2021 because of the COVID-19 pandemic.

15. A large percentage of the work that Dryden performed in her DOE Specialist I position involved using a computer and engaging in computer correspondence, and Dryden infrequently met with or communicated by phone with others in the performance of this role. As a result, Dryden was able to perform her job effectively while she worked remotely.

16. Prior to her maternity leave, Dryden followed the suggestion of her supervisor and submitted several hybrid maternity leave options, in writing, to her direct supervisor Christina Lusk ("Lusk"), the DOE Division Director Cheriee Watterson ("Watterson"), her DOE Program Director Mikayla Hardy ("Hardy"), and a Bureau of Human Resources ("BHR") representative Deb Olson ("Olson").

17. Prior to her maternity leave, Dryden also personally discussed her hybrid maternity

leave with Lusk, and Dryden and Watterson worked through the logistics of how Dryden would work remotely with her infant present during her hybrid maternity leave.

18. Dryden requested a hybrid maternity leave because she had already established that she could perform her job duties effectively from her home, and because staffing issues related to Covid-19 outbreaks had caused many daycares in the Pierre area to either close or to decline to accept infants.

19. Dryden was ultimately able to secure a daycare provider for her infant, but was advised that the daycare provider would not be able to accept her infant until a date after Dryden's twelve-week maternity leave expired.

20. Dryden's supervisors initially gave Dryden written permission to take a hybrid maternity leave where Dryden would take her twelve-week maternity leave, and would then work remotely from her home for an additional twelve weeks.

21. Dryden relied upon her supervisors' approval of her hybrid maternity leave schedule when she contracted for daycare services for her infant.

22. Dryden began her hybrid maternity leave on November 9, 2021.

23. On January 29, 2022, Dryden reported to her DOE office because her regular maternity leave was set to expire on February 1, 2022 and her remote work schedule was supposed to begin that day. At that time, Watterson orally confirmed that Dryden was permitted to work remotely for the next twelve (12) weeks.

24. On January 31, 2022, Hardy called Dryden and stated that Hardy and Watterson had decided that it was not feasible for Dryden to work from home with an infant present, and that Dryden needed to be back in the office full-time on February 1, 2022 or Dryden would no

longer be employed.

25. Dryden protested that she had relied upon her supervisor's approval when she contracted for child care.

26. Dryden was upset and fearful of losing her job, and called Darin Seeley, the Commissioner of the State's BHR, to explain her circumstances and to ask if she was going to be fired if she did not report to work at the DOE offices on February 1, 2022.

27. Commissioner Seeley told Dryden that she would not be fired, and that he would "look into" her complaint that her supervisors had revoked her permission to work remotely because she would have an infant present in her home.

28. As directed by Seeley, Dryden reported to work remotely on February 1, 2022, and was immediately summoned to a telephone meeting with Olson, Watterson and Hardy.

29. During this meeting, Dryden's supervisors instructed Dryden for the first time that there was a leave form that Dryden supposedly needed to complete to be considered for remote work.

30. During this meeting, Olson stated that Dryden's remote work request was not going to be approved because if it was approved, "every new mom" would be asking to work from home.

31. During the call, Olson suggested that it was not possible or safe for Dryden to work full-time with a baby present.

32. During the call, Olson admitted that she did not know what Dryden's job duties were, and that she did not know if there were job duties that Dryden could perform remotely. However, Olson stated that the DOE would accommodate a leave without pay for Dryden until

5

March 7 so long as Dryden was *not* working remotely.

33. After the February 1, 2022 phone meeting, Dryden had not choice but to agree that she would not work remotely while her infant was in her home, that she would instead use her accrued paid leave until February 14, 2022, and that when her paid leave was exhausted after February 14, 2022, Dryden would then be placed on unpaid leave until March 7, 2022 when Dryden would then be required to return to work at the DOE offices.

34. Olson followed up on this agreement by instructing Dryden to return her work equipment and projects to the physical DOE office so that Dryden could not work remotely during her leave.

35. On February 8, 2022, Hardy called Dryden and this time Hardy announced that Dryden's paid and unpaid leave approval was revoked, and that Dryden either needed to return to work on February 9, 2022 or turn in her state equipment and be placed on a status that Hardy called "permanent leave without pay."

36. There is not an employee status described as "permanent leave without pay" identified in the State's policies.

37. On February 8, 2022, Dryden was constructively discharged by the State, which was aware that Dryden could not return to work at its DOE office on February 9, 2022 because she did not have child care for her newborn infant until March 7, 2022.

6

## CAUSES OF ACTION

### COUNT ONE

**Sex Discrimination in Violation of Title VII of the Civil Rights Act of 1964 as amended by the Pregnancy Discrimination Act of 1978.**

38. The Plaintiff incorporates the foregoing paragraphs by reference.

39. 42 U.S.C. § 2000e-2(a)(l) provides in relevant part that it is unlawful for an employer "to fail or refuse to hire or to discharge any individual, or to otherwise discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's ... sex[.]"

40. 42 U.S.C. § 2000e(k) provides in relevant part that in Title VII, the "terms 'because of sex' or 'on the basis of sex' include, but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions; and women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes, including receipt of benefits under fringe benefit programs, as other person so affected but similar in their ability or inability to work...."

41. The Defendant's conduct described herein violates 42 U.S.C. § 2000e-2 and 42 U.S.C. § 2000e(k).

42. The Defendant relied upon negative stereotypes about "new moms" seeking to delay returning to work after maternity leave and about "new moms" being unable to safely care for an infant while working remotely to revoke its prior approvals of the Plaintiff's leave schedules, and to deny the Plaintiff's permission to work remotely.

43. The Defendant harassed the Plaintiff about her parenting by suggesting that the Plaintiff's request to work remotely was irresponsible and unsafe for her infant child.

44. The Defendant made the Plaintiff's work conditions intolerable by repeatedly

7

revoking her approved leave schedules, refusing to consider a remote work schedule based upon a stereotyped "about "new moms" and a "safety" concern for her infant, and by instructing her on February 8, 2022 that she needed to report to work at the DOE office on February 9, 2022 when it knew that Plaintiff had requested leave because she did not have child care for her infant child due to pandemic-related conditions.

45. The Plaintiff's termination was a reasonably foreseeable result of the Defendant's actions.

46. The Defendant constructively discharged the Plaintiff on February 8, 2022.

47. The Defendant used the Plaintiff's sex as a motivating factor for the Defendant's adverse employment actions against the Plaintiff, which included repeatedly revoking her approved leave schedules, reducing her work status in February 2022, and constructively discharging the Plaintiff from employment on February 8, 2022.

48. The Defendant used its stereotyped bias about the Plaintiff's pregnancy-related condition as a "new mom" as a motivating factor for the Defendant's adverse employment actions against the Plaintiff, which included repeatedly revoking her approved leave schedules, reducing her work status in February 2022, and constructively discharging the Plaintiff from employment on February 8, 2022.

49. As a result of the Defendant's discriminatory conduct, the Plaintiff has suffered and will continue to suffer past and present loss of income, mental anguish, emotional distress, humiliation, embarrassment, loss of reputation and other damages.

50. The Defendant committed the above-alleged conduct with reckless disregard and/or deliberate disregard for her rights under federal law.

## COUNT TWO

**Reprisal Discrimination in Violation of Title VII of the Civil Rights Act of 1964**

51. The Plaintiff incorporates the foregoing paragraphs by reference.

52. Title VII, 42 U.S.C. § 2000e-3(a) provides in part that it is an unlawful employment practice for an "employer to discriminate against any of his employees or applicants for employment" or "to discriminate against any individual" "because [s]he has opposed any practice made an unlawful employment practice by this subchapter...."

53. The Plaintiff opposed discrimination when she complained to the Defendant that she was being treated less favorably about leave and remote work assignments on the basis of her sex as a "new mom."

54. The Plaintiff reasonably believed that the Defendant's revocations of her leave plans and its denial of Plaintiff's remote work schedule were discriminatory and directly related to her sex.

55. After the Plaintiff complained of discrimination, the Defendant repeatedly revoked leave schedules that it had approved for the Plaintiff, denied her a remote work schedule, and constructively discharged the Plaintiff.

56. The Defendant's repeated revocations of the Plaintiff's approved leave schedules, denial of a remote work schedule, and its constructive discharge of the Plaintiff might well dissuade a reasonable worker in the same or similar circumstances from making or supporting a charge of discrimination.

57. The Defendant made the Plaintiff's work conditions intolerable by repeatedly revoking her approved leave schedules, refusing to consider a remote work schedule based upon a stereotyped "about "new moms" and a "safety" concern for her infant, and by instructing her

9

on February 8, 2022 that she needed to report to work at the DOE office on February 9, 2022 when it knew that Plaintiff had requested leave because she did not have child care for her infant child due to pandemic-related conditions.

58. The Plaintiff's constructive discharge was a reasonably foreseeable result of the Defendant's actions.

59. The Defendant constructively discharged the Plaintiff on February 8, 2022.

60. The Defendant would not have constructively discharged the Plaintiff's from employment but for the Plaintiff's complaints about discrimination based on her sex and status as a "new mom."

61. The Defendant's adverse employment actions were taken in retaliation for the Plaintiff's protected conduct in violation of 42 U.S.C. § 2000e-3.

62. As a direct and proximate result of the Defendant's unlawful conduct, the Plaintiff has suffered loss of past and future income and employee benefits, mental anguish, emotional distress, humiliation, embarrassment, loss of reputation, and other damages.

63. Defendant committed the above-alleged conduct with reckless disregard and/or deliberate disregard for her rights under both state and federal law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Kathryn Dryden prays for judgment against Defendant Joseph Graves in his official capacity as the Secretary of the South Dakota Department of Education, as follows:

    A.    That the Court makes a determination that the practices of the Defendant complained of in this Complaint violated the Plaintiff's right as secured under Title VII and/or the Pregnancy Discrimination Act;

    B.    For all relief available to the Plaintiff, including compensatory

   relief and damages arising from loss of past and future income, benefits, emotional distress, and other damages, with interest on such amounts;

C. For the Plaintiffs attorneys' fees, costs and disbursements incurred herein;

D. For a jury trial on all issues;

E. For such further and other relief as the Court deems just and equitable.

Dated this 4th day of April, 2023.

            JOHNSON POCHOP & BARTLING
            LAW OFFICE, LLP

            /s/ Stephanie E. Pochop
            Stephanie E. Pochop
            Gavin Pochop
            405 Main St. | P.O. Box 149
            Gregory, SD 57533
            (605) 835-8391
            Stephanie@Rosebudlawyers.com
            Gavin@Rosebudlawyers.com
            *Attorneys for Plaintiff Kathryn Dryden*